FILED
BILLINGS, MT
2006 JAN 5 PM 12 05
PATRICK E. DUFFY, CLERK
BY _____
        DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BILLINGS DIVISION

| | |
|---|---|
| PAMELA K. ELLIOTT, ) | Cause No. CV 05-52-BLG-RWA |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | FINDINGS AND RECOMMENDATION |
| ) | OF U.S. MAGISTRATE JUDGE |
| JO ACTON, ) | |
| ) | |
| Respondent. ) | |
| ) | |

On April 1, 2005, Petitioner Pamela Elliott filed this action for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254. Elliot is a state prisoner proceeding *pro se*.

On July 25, 2005, the Court ordered Respondent (hereafter "the State") to file materials relating to Elliot's motion for a continuance in the trial court, the complete trial transcript, the materials considered by the trial court in connection with Elliot's petition for postconviction relief, and the briefs filed by each party on appeal from the trial court's denial of postconviction relief. The State complied on August 15, 2005.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 1

## I. Factual and Procedural Background

On January 4, 1999, Elliott was charged with deliberate homicide in Montana's Sixteenth Judicial District Court, Custer County. She was accused of killing her newborn baby in the early part of June, 1998. *See State v. Elliott*, 43 P.3d 279, 281, ¶ 1, 283 ¶ 22 (Mont. 2002) ("*Elliott I*"); *Elliott v. State*, 106 P.3d 517, 519 ¶ 4 (Mont. 2005) ("*Elliott II*").[1]

J.B. Wheatcroft and Cynthia Thornton were appointed to represent Elliott. Two weeks before trial, Thornton filed a motion to continue the trial to allow the defense time to obtain the services of an expert witness. A hearing was quickly scheduled, but Thornton was not available, so Wheatcroft argued the motion. Counsel had planned to use a local ob-gyn, Dr. Billedeaux, to testify about the possibility that the baby was stillborn. However, for reasons that were not explained at the time or since, Dr. Billedeaux declined to testify. The trial judge, Judge Day, denied the motion to continue because the defense had had several months to find an expert witness and gave no indication of diligence in its attempts to do so. *See Elliott I*, 43 P.3d at 285-86, ¶¶ 38-47; *Elliott II*, 106 P.3d at 520, ¶¶ 10-13.

---

[1] The citations in this section are taken from the Montana Supreme Court's decisions in Elliott's case because they are easier to refer to than the materials submitted by the State, which are untabbed and unpaginated. However, the Court has carefully reviewed all the materials submitted by the State.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 2

At trial, the central question was whether the baby was alive when it was born. Testimony showed that Elliott, who had given birth to three children previously, concealed her pregnancy and lied on numerous occasions about having given birth. In January 1998, she told a friend that her legs were swollen and speculated on possible medical explanations. In March of 1998, she told a friend she had Hodgkin's disease. In April and May of 1998, she attributed her apparent weight gain to swelling from chemotherapy for a malignant tumor in one of her legs. In June of 1998, when she was in labor, Elliott told a friend that she had a stomachache from food poisoning. When, a day or so later, another friend found Elliott supine on her couch and wrapped in a bloody blanket, she explained her condition by saying she was bleeding as a side effect of chemotherapy. She told her mother the same thing.

Six months after birth, the baby's body was found under a rubber container lid inside a cabinet in Elliott's basement. The body had been wrapped in a towel and placed inside a white plastic trash bag which was, in turn, placed inside two black plastic garbage bags along with wood chips and cat litter. Examination of the development of the femurs and tibias indicated that the baby was near- or full-term, about 40 weeks' gestational age. The baby's skull had multiple stellate fractures that were inconsistent with birth trauma. Dr. Gary Dale, a forensic pathologist, testified that the force required to cause the fractures would have

been equivalent to the forces involved in a motor vehicle accident or a fall from a great height.  Dr. J. Randall Rauh, an ob-gyn specialist in Miles City, testified that the skull fractures would not have occurred if the baby had died twenty-four hours or more before birth, because the brain would have liquefied, and the bones of the skull would have moved rather than breaking.  *See generally Elliott I*, 43 P.3d at 282-83, ¶¶ 11-21.

Elliott's tape-recorded statements were played for the jury, but neither the transcript nor the tapes are in the record before this Court.  In her interview with police, Elliott initially repeated her denial that she had had a baby, then said she did not notice the baby breathing or see it move.  *Id.* at 282 ¶ 15.

The jury found Elliott guilty of deliberate homicide.  She was sentenced to serve fifty years in prison, with ten years suspended.  *Id.* at 283 ¶ 22.

Elliott appealed, arguing, among other things, that there was no probable cause to support the filing of an information, that the evidence was not sufficient to support a conviction, and that the State shifted the burden to her to prove that the baby was stillborn.  *Id.* at 281-82, ¶¶ 3, 7-8.  On February 21, 2002, the Montana Supreme Court affirmed her conviction.  *Id.* at 290 ¶ 90.

Elliott then filed a petition for postconviction relief.  New counsel was appointed to represent her.  After an evidentiary hearing, the trial court found that counsel were not

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 4

constitutionally ineffective. Elliott again appealed, and the Montana Supreme Court affirmed the trial court's denial of postconviction relief on January 25, 2005. *Elliott II*, 106 P.3d at 521 ¶ 17.

## II. Elliott's Allegations

Elliott contends, first, that her right to due process was violated because the State shifted the burden to her to prove that the baby was stillborn. *See* Pet. (doc. 1) at 4, ¶ 15A.

Second, Elliott claims that her trial counsel were ineffective because they "failed to adequately prepare for trial," failed to obtain the services of an expert witness, and failed to inform her that the State offered a plea agreement. *Id.* at 5, ¶ 15B.

Third, Elliott alleges that her right to due process was violated because the evidence was not sufficient to support her conviction. *Id.* at 5, ¶ 15C.

Fourth, Elliott contends that her Sixth and Fourteenth Amendment rights were violated because the trial court permitted the State to file an Information despite the lack of probable cause to believe that the baby was born alive. *Id.* at 6, ¶ 15D.

## III. Analysis

Elliott's petition may be barred by procedural default or the federal statute of limitations. However, the Court will not consider those issues at this time. It is more efficient to

proceed to the merits.

Under 28 U.S.C. § 2254(d)(1) and (2), Elliott's claims must be rejected unless the Montana Supreme Court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or unless its opinion was "based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(1), (2).

"A decision is contrary to clearly established federal law if it fails to apply the correct controlling authority, or if it applies the controlling authority to a case involving facts materially indistinguishable from those in a controlling case, but nonetheless reaches a different result." *Clark v. Murphy*, 331 F.3d 1062, 1067 (9th Cir. 2003) (as amended) (citing *Williams v. Taylor*, 529 U.S. 362, 413-14 (2000)). A state court's decision is an "unreasonable application" of federal law if it is "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). While this standard is not precise, it is clear that the state court's decision must be "more than incorrect or erroneous." *Id*.

### A. Sufficiency of the Evidence and Burden-Shifting

Elliott's first and third grounds for relief are related and will be discussed together.

"The Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 6


fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). *Jackson v. Virginia*, 443 U.S. 307 (1979), requires that habeas corpus relief be provided "if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Id.* at 324.

In this case, the medical evidence was equivocal. It was impossible to say whether the skull fractures were the cause of death. It is possible that the baby died less than twelve hours before birth, so that the brain remained intact but the baby was stillborn. But a rational juror could have inferred from Elliott's conduct that the baby was born alive. Elliott was apparently the only person who was there and who knew whether the baby was alive or dead. She had had three children previously and there was no suggestion that she was developmentally disabled or otherwise unable to understand what was happening to her. There was substantial evidence that Elliott was desperate to conceal either the fact or her own knowledge of her pregnancy and labor, because she stuck with stories that were patently untrue. She insisted she had cancer and was undergoing chemotherapy; certainly she knew that to be a lie. She was critically ill because the placenta had attached to the uterine wall and threatened to kill her by hemorrhage and infection. No placenta without pregnancy. Yet Elliott continued to insist that she had not recently had a baby or

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 7

even been pregnant. She refused to acknowledge that she had undergone the pain of labor, telling several people that her problem was simply "bleeding" as a result of chemotherapy. Although there was no direct evidence that the baby was alive when it was born, Elliott's egregious and repeated lies amply supported a rational inference that the only witness who was there - Elliott herself - knew the baby was alive.

It is possible that the jury might have decided the case differently if Elliott had produced evidence, direct or circumstantial, that the baby was stillborn.[2] That is the significance of her argument regarding counsel's failure to retain an expert witness. But the bare possibility does not mean that the State shifted any part of its burden to her. The State does not shift the burden of proof when it introduces evidence sufficient to support a conviction and then sits down to allow the defendant an opportunity to introduce its own evidence. If it was strategically important for Elliott to introduce evidence that the baby was stillborn, that is only because the State had already introduced evidence sufficient to support a conviction.

The Montana Supreme Court did not err, much less unreasonably so. Elliott's first and third claims for relief should be denied.

---

[2] By playing for the jury the tapes of Elliott's statements to the police, the State introduced some evidence that the baby was stillborn, because that is what Elliott said. The jury was aware of her contention, considered it, and rejected it.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 8

**B. Probable Cause to File Information**

Having decided that there was sufficient evidence to support Elliott's conviction beyond a reasonable doubt, the Court need not consider whether there was probable cause to support the filing of an information. *See Albright v. Oliver*, 510 U.S. 266, 283 (1994) (Kennedy, J., concurring, joined by Thomas, J.) ("If the charges are not proved beyond a reasonable doubt at trial, the charges are dismissed; if the charges are proved beyond a reasonable doubt at trial, any standard applicable to the initiation of charges is irrelevant because it is perforce met.").

At any rate, there clearly was probable cause to support the charge, as the State's motion outlined most of the same evidence that was presented at trial and, in fact, a bit more. *See* Mot. and Aff. in Supp. of Mot. for Leave to File Information at 2-6[3]; *Elliott I*, 43 P.3d at 284 ¶ 31. Elliott's fourth claim for relief should be denied.

**C. Ineffective Assistance of Counsel**

To show that counsel failed to perform as the counsel guaranteed by the Sixth and Fourteenth Amendments, Elliott must show that counsel's performance fell below an objective standard of reasonableness, *Strickland v. Washington*, 466 U.S. 668, 687-88

---

[3] This document is attached to Appellee's Response Brief in *Elliott I* and is included in the materials filed by the State (doc. 7).

(1984), and that she was prejudiced by counsel's errors, *id.* at 693.  Under the first prong, counsel's performance need not be perfect.  It must, however, fall "within the range of competence demanded of attorneys in criminal cases." *McMann v. Richardson*, 397 U.S. 759, 771 (1970)).  Under the prejudice prong, Elliott must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id*.

Because Elliott must show both that her counsel's advice fell outside the broad range of competent assistance and that she was prejudiced as a result, "there is no reason for a court deciding an ineffective assistance claim . . . even to address both components of the inquiry if the defendant makes an insufficient showing on one."  *Strickland*, 466 U.S. at 697.

### 1. Failure to Obtain an Expert Witness

Elliott has not identified any medical expert who might have testified in her favor at trial.  The chances that the baby was stillborn may have been heightened by Elliott's prenatal alcohol abuse.  The jury heard evidence on that point, even without an expert testifying for Elliott.  But even the best expert would still have confronted the fact that the baby's skull was fractured multiple times in a manner inconsistent with birth trauma, as well

as the fact that Elliott repeatedly and insistently told lies on a grand scale to conceal her pregnancy and the birth of the baby. Even if counsel could have tried harder to find an expert witness, Elliott has pointed to no evidence that they could have found someone whose testimony might have changed the result in this case. Without that evidence, she cannot show that she was prejudiced.

### 2. Failure to Disclose Plea Offer by State

After the evidentiary hearing on Elliott's petition for postconviction relief, the trial court concluded that "[t]he only offer was identified by Wheatcroft and would have required a plea of guilty by Elliott to mitigated deliberate homicide." *See* Findings of Fact and Conclusions of Law at 10, ¶ 14.[4] Elliott's "consistent denial of any wrongdoing supports Wheatcroft's and Thornton's opinion that any plea of guilty was a nonviable alternative." *Id.*

There is no error here. To show prejudice, Elliott has to show a reasonable probability that she would have accepted the plea offer. *See, e.g., Jones v. Wood*, 114 F.3d 1002, 1012 (9th Cir. 1997). But Elliott was specifically advised at trial of the possibility that she could offer jury instructions on mitigated deliberate homicide and negligent homicide to try to decrease the

---

[4] This document is attached to Appellant's Opening Brief in *Elliott II*, which is located in the large, untabbed, unpaginated pile of materials submitted by the State (doc. 7).

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 11

potential penalty to which she was exposed. She personally - and contrary to the advice of her counsel - chose to forego offering those instructions. *See* Tr. of Meeting with Defense Counsel and Defendant (Dec. 9, 1999) at 1-11.[5] Consequently, there is no reason to believe that Elliott would have entered or even seriously considered pleading guilty to mitigated deliberate homicide had such a plea been offered to her. She cannot show prejudice as a result of counsel's alleged failure to relay the plea offer to her.

### 3. Failure to "Adequately Prepare" for Trial

As the Court understands Elliott's federal petition, she claims that counsel failed to "adequately prepare" in the sense of failing to obtain the services of an expert witness. In an abundance of caution, the Court has reviewed all the grounds raised by Elliott at the evidentiary hearing on her state petition for postconviction relief and considered them in light of the materials filed by the State. There was no error on any point by the state courts.

Counsel testified that they were not concerned that they reduced the number of their peremptory challenges when they failed to challenge prospective juror Jerke for cause. A defendant's exercise of a peremptory challenge removes the biased juror "as effectively as if the trial court had excused him for cause," *Ross*

---

[5] This document is included in the materials filed by the State (doc. 7).

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 12

*v. Oklahoma*, 487 U.S. 81, 86 (1988), and "[s]o long as the jury that sits is impartial, the fact that the defendant had to use a peremptory challenge to achieve that result does not mean the Sixth Amendment was violated," *id*. at 88.  Elliott has not identified any other objectionable juror who was left on the jury as a result of counsels' use of a peremptory challenge to remove Jerke.

Elliott claimed in state court that Kerr surprised her counsel by testifying on the ultimate factual issue of whether the baby was alive when born.  Kerr in fact testified that the skull fractures were incurred after birth but before there was time for any healing.  That testimony was consistent with the possibility that the baby was stillborn.  It was also consistent with Dr. Rauh's testimony that the baby's brain would have liquefied if she had died more than twelve hours before birth, thus precluding or at least mitigating the fractures.  Elliott's position at trial was, in effect, that the baby died less than twelve hours before her birth.  All the medical evidence at trial was consistent with that possibility.  The jury simply did not believe that Elliott would have persisted in her lies if the baby had been stillborn.  They were entitled to draw that inference.  None of the experts' testimony was decisive.

Counsels' failure to object at appropriate times during the playing of the tapes of Elliott's statements also did not prejudice Elliott.  Although the jury heard inadmissible evidence as a

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 13

consequence, there is no reason to think that, had the jury not heard that evidence, it would have accepted the theoretical possibility that the baby was stillborn and found some other explanation for the skull fractures and Elliott's lies.

### 4. Conclusion

Whatever might be said about counsels' performance, Elliott has not shown that she was actually prejudiced in any respect by their alleged shortcomings. Therefore, she was not deprived of the effective assistance of counsel guaranteed by the Sixth and Fourteenth Amendments.

## IV. Certificate of Appealability

### A. Governing Standards

Pursuant to 28 U.S.C. § 2253(c), "[a] certificate of appealability ['COA'] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." *See Hohn v. United States*, 524 U.S. 236 (1998); *Lambright v. Stewart*, 220 F.3d 1022, 1024 (9th Cir. 2000). The standard of a "substantial showing" can be satisfied on an issue-by-issue basis. *Lambright*, 220 F.3d at 1024 (citing 28 U.S.C. § 2253(c)(3)).

> [I]n order to make a substantial showing of the denial of a federal right a petitioner . . . "must demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are 'adequate to deserve encouragement to proceed further.'"

*Lozada v. Deeds*, 498 U.S. 430, 432 (1991) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)).  *See also Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.").  Thus, a petitioner may obtain a COA even if she does not establish that she will prevail on the merits.  The COA inquiry seeks only to prevent frivolous appeals from wasting judicial resources, while still affording petitioners an opportunity to show potential for merit.  *Lambright*, 220 F.3d at 1025.  Any doubt as to whether a petitioner has met the standard is resolved in her favor.  *Id.*

Finally, the COA must indicate which issues satisfy the required showing, 28 U.S.C. § 2253(c)(3), and the Court must "state why a certificate should *not* issue."  Fed. R. App. P. 22(b)(1) (emphasis added).  The Court need not explain why a certificate *should* issue.  *Id.*

### B. Discussion

On none of Elliott's claims has she made a showing of any substance that she was deprived of a constitutional right.  The evidence that led to her conviction was the combination of the baby's skull fractures and Elliott's own year-long course of lies about her pregnancy and childbirth.  While circumstantial, that evidence was compelling and sufficed to support a conviction beyond a reasonable doubt.  The State's introduction of that evidence did

not unconstitutionally shift the burden of proof to Elliott. Her conviction obviates the issue of whether there was probable cause to support the filing of an information. While counsel's performance probably could have been better in some respects, Elliott has made no showing on the prejudice prong of the *Strickland* analysis. Most significantly, she has not identified any expert who would have been willing to testify at trial that there was a realistic medical possibility that the baby was stillborn.

### RECOMMENDATION

Based on the foregoing, the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B), **RECOMMENDS** that Elliott's Petition (doc. 1) be DENIED on the merits. The undersigned further **RECOMMENDS** that a certificate of appealability be DENIED.

The Clerk of Court shall serve a copy of the Findings and Recommendation of the United States Magistrate Judge upon the Petitioner. Petitioner is advised that, pursuant to 28 U.S.C. § 636, any objections to these findings must be filed or delivered to prison authorities for mailing within twenty (20) calendar days after the date on the certificate of mailing below, or objection is waived.

<u>Elliott must keep the Court informed of her current mailing address while her case remains pending</u>.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 16

DATED this 5th day of ~~December, 2005~~ Jan. 2006.

_____
Richard W. Anderson
United States Magistrate Judge

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 17